**F I L E D**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUN 1 4 2001

*Robert M March*

CLERK

MICHAEL LAW,

        Plaintiff,

vs.

        No. CIV 00-1289 BB/LFG

LARRY G. MASSANARI, Acting
Commissioner, Social Security
Administration[1]

        Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[2]

Plaintiff Michael Law ("Law") invokes this Court's jurisdiction under 42 U.S.C. § 405(g)

seeking judicial review of a final decision of the Commissioner of Social Security

("Commissioner").  The Commissioner determined that Law was not eligible for adult disabled

child benefits or for supplemental security income ("SSI").   Law moves this Court for an order

reversing the Commissioner's final decision.

Law was born on March 29, 1959 and was 39 years old at the time of the administrative

---

[1]On March 29, 2001, Larry G. Massanari became the Acting Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d)(1), Mr. Massanari is substituted for Kenneth S. Apfel as the Defendant in this action.

[2]**Within ten (10) days after a party is served with a copy of the legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the analysis and recommendations.  If no objections are filed, no appellate review will be allowed.**

hearing in this case. He attended high school through the 11th grade and was in Special Education throughout his school years. Law had a job, of sorts, from October 1991 to September 1993 as a woodworking assistant. However, Plaintiff argues and the Commissioner concedes (*see* Defendant's Response to Plaintiff's Motion to Reverse/Remand, Doc. 9, at 5) that this job did not constitute substantial gainful activity; thus, Law has essentially no prior work experience.

Law's first application for SSI benefits, filed October 1995, was denied in January 1996. He filed a second application for SSI in December 1996 and an application for adult disabled child benefits in April 1997. These latter two applications are the subject of this appeal. They were denied initially and on reconsideration, and Law requested a hearing before an Administrative Law Judge ("ALJ"), which was held July 15, 1998. The ALJ issued his opinion on August 6, 1998 denying benefits, and on July 28, 2000, the Appeals Council denied Law's request for review. This appeal followed. On May 22, 2000, during the pendency of the two current claims before the Appeals Council, Law submitted a new application for SSI benefits. That application was approved on November 30, 2000, and Law was awarded SSI benefits effective May 2000.

### Standards for Determining Disability

In determining disability, the Commissioner applies a five-step sequential evaluation process.[3] The burden rests upon the claimant throughout the first four steps of this process to prove disability, and if the claimant is successful in sustaining his burden at each step, the burden then shifts to the Commissioner at step five. If at any step in the process, the Commissioner determines that the

---

[3]20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2000); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

claimant is or is not disabled, the evaluation ends.[4]

Briefly, the steps are:  at step one, claimant must prove he is not currently engaged in substantial gainful activity;[5] at step two, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . .;"[6] at step three, the Commissioner must conclude the claimant is disabled if he proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (2000);[7] and, at step four, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[8] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's residual functional capacity ("RFC"),[9] age, education and past work experience, he is capable of performing other work.[10]  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove he cannot, in fact, perform that

--------

[4]20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2000); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[5]20 C.F.R. §§ 404.1520(b), 416.920(b) (2000).

[6]20 C.F.R. §§ 404.1520(c), 416.920(c) (2000).

[7]20 C.F.R. §§ 404.1520(d), 416.920(d) (2000).  If a claimant's impairment meets certain criteria, that means his impairments are "severe enough to prevent a person from doing any gainful activity."  20 C.F.R. §§ 404.1525(a), 416.925(a) (2000).

[8]20 C.F.R. §§ 404.1520(e), 416.920(e) (2000).

[9]The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy.  Those categories are:  sedentary, light, medium, heavy and very heavy. 20 C.F.R. §§ 404.1567, 416.967 (2000).

[10]20 C.F.R. §§ 404.1520(f), 416.920(f) (2000).

work.[11]  In the case at bar, the ALJ made a dispositive determination of non-disability at step two of

the sequential evaluation and made further determinations at steps four and five.

## Standard of Review and Allegations of Error

On appeal, the Court considers whether the Commissioner's final decision is supported by

substantial evidence, and whether the Commissioner used the correct legal standards.  Glenn v.

Shalala, 21 F.3d 983 (10th Cir. 1994).  To be substantial, evidence must be relevant and sufficient

for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere

scintilla, but it need not be a preponderance.  Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir.

1992.  In Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) the Tenth Circuit described,

for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the
> evidence, but an ALJ is not required to discuss every piece of
> evidence.  Rather, in addition to discussing the evidence supporting
> his decision, the ALJ must also discuss the uncontroverted evidence
> he chooses not to rely upon, as well as significantly probative evidence
> he rejects.  [Citations omitted].

If supported by substantial evidence, the decision of the Commissioner is conclusive and must be

affirmed.   The Court cannot reweigh the evidence or substitute its judgment for that of the

Commissioner.  Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

Law contends that the ALJ erred in the following ways:  (1) in his finding that Law's

woodworking job constituted substantial gainful activity; (2) in his step-two finding that Law had

no severe impairment; (3) in his step-four finding that Law could perform past relevant work; (4)

in his step-five finding that there were other jobs in the national economy that Law could perform;

---

[11]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

(5) in finding that Law was not disabled prior to age 22, as required for receipt of adult disabled child benefits; (6) in his assessment of the significance of receipt of collateral benefits.   In addition, Law asserts in his reply brief that the ALJ failed to make a decision as to whether he is entitled to benefits as of September 28, 1995, which he contends is the protective filing date of his SSI claim.

## Effect of Erroneous Ruling as to Substantial Gainful Activity

The Commissioner concedes that the ALJ erred in finding that Law's past job as a woodworking assistant constitutes "substantial gainful activity" as that term is defined under Social Security law and regulations.  While acknowledging this mistake, the Commissioner offers some justification for the ALJ's error, noting that the record seemed to show that Law worked at American Wood Products as a woodworking assistant from approximately 1991 to 1993, that he worked full time, 5 or 6 days a week and earned $4.00 per day, and that his duties consisted of handing equipment to the woodworker, carrying wood and other items for him, and using a saw, drill press, and sander.  Indeed, this evidence is on the record.

However, as Law's counsel pointed out, the ALJ failed to obtain Law's earnings record to confirm the statements regarding Law's employment, although the earnings records were readily available and clearly refuted the assertion of substantial gainful activity; the ALJ "erred in relying solely on the verbal statements of an individual who is medically documented to have verbal comprehension within a mentally retarded range."  [Doc. 8, at 9].  Counsel further asserts that Law's work at American Wood Products  was "subsidized activity arranged because of a benevolent attitude toward him from . . . a long-time family friend," rather than substantial gainful activity, and that Law tended to overstate his past experience.  As evidenced by the

earnings record and the affidavit of Law's supervisor/benefactor, this seems to have been the case. *See* Affidavit of Wilho J. Aijala, Tr. 374:

> During the period of time I was employed by American Wood Products, Michael would often come to visit me at the shop ... I would sometimes let Michael sweep the shop or clean up after my work ... He did not work as a woodworking assistant and did not have skills for that work. Use of woodworking machines would have been too dangerous for Michael because of his cerebral palsy.

Law argues that the ALJ relied on the erroneous finding of substantial gainful activity for all parts of his decision, and the error permeates the opinion and invalidates his conclusion of nondisability. The Commissioner concedes that the ALJ's initial error may have affected his step-four finding that Law could return to past relevant work, but contends that because the ALJ provided other reasons for his decisions, the error was harmless with regard to other parts of the analysis and does not provide a basis for reversal or remand. As discussed below, the Court agrees with Law that the error appears to have tainted the ALJ's decision, in the following ways:

First, the error, though well intentioned, clearly affected the ALJ's determination at step four that Law can return to his "past relevant work," as the Commissioner acknowledges. Secondly, the ALJ's misapprehension that Law engaged in substantial gainful activity caused him, at step two, to underestimate the severity of Law's impairments and led him, at step five, to assume Law had transferable skills and to overestimate Law's ability to engage in other work in the national economy. Finally, the ALJ's initial assumption of substantial gainful activity led him to discount record evidence (including receipt of collateral benefits) that Law was disabled prior to age 22, a prerequisite for entitlement to adult disabled child benefits. 42 U.S.C. § 402(d)(1)(B)(ii); 20 C.F.R. § 404.350(a)(5). For these reasons, reversal is necessary.

## The Step Four Determination

As Law's counsel points out and as the Commissioner concedes, Law's earnings in the years 1991-93 were not sufficient to constitute "substantial gainful activity" under Social Security regulations.  20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2); SSR 83-33, 1983 WL 31255, at *2. If prior work experience does not constitute substantial gainful employment, then it cannot be classified as "past relevant work."  20 C.F.R. §§404.1565(a); 416.965(a).

The Court agrees with Law's argument that "Mr. Law has at no time engaged in substantial gainful activity and, therefore, has no past relevant work."  Thus, the ALJ's assumption of prior gainful activity led him to the erroneous conclusion at step four that Law could return to his past relevant "work" as a woodworking assistant. The finding of nondisability on this basis is therefore unsupported by the record, and the Commissioner concedes this point. (Doc. 9, at 8).

## The Nonseverity Determination and Finding of Nondisability Prior to Age 22

The ALJ determined at step two that Law's claimed impairments were not "severe," in that Law had not met his burden of showing "that he has experienced more than a minimal impact on his capacities for work related functioning."

For the adult disabled child benefits, Law must show at step two that he had a severe impairment prior to March 29, 1981, the date he turned 22; for SSI, he must show that he had a severe impairment after his protective filing date of December 2, 1996.[12]  Entitlement to SSI

---

[12]Plaintiff contends that the ALJ failed to consider an award of benefits as of September 28, 1995, which he asserts is the protective filing date.  However, the protective filing date for the SSI application currently under review is December 2, 1996 (Tr. 354).  The September 28, 1995 date appears on the October 1995 application (Tr. 347-349), which was denied in January 1996 and apparently not appealed.

7

benefits begins as of the month of application or the date of onset, whichever is later.  SSR 82-52, 1982 WL 31376, at *2.  In making the entitlement determination in SSI cases, the Commissioner may consider evidence relating to the period up to the date of the ALJ's decision.  20 C.F.R. §§ 416.1470(b); 416.1476(b)(1) (2000).  Thus, evidence of Law's condition between December 2, 1996 and the date of the ALJ's decision on August 6, 1998 is relevant to his SSI eligibility and may be considered in determining whether he is disabled within the meaning of the Act.

In addition, the ALJ may also consider evidence of a claimant's condition outside of the relevant time period for the purpose of providing a full picture of the claimant's medical treatment history, Dugan v. Sullivan, No. 89-1121-C, 1991 WL 105230, at * 4 (D. Kan. May 31, 1991); for example, when the claimant's later medical records contain references to medical findings dating from the relevant period or "disclose the severity and continuity of impairments existing before the earning requirement date or . . . identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." Baca v. Dept. of Health & Human Servs., 5 F.3d 476, 479 (10th Cir. 1993). A treating physician may retrospectively diagnose a disease which renders a claimant severely impaired, although the physician's diagnosis must be based on evidence of actual disability. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1348-49 (10th Cir. 1990).

At step two, the ALJ is to determine "whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S. Ct. 2287, 2291 (1987).  The step-two severity finding must be based on medical factors alone, without consideration of vocational factors such as age, education, and work experience, and "the claimant must make a threshold showing that his medically determinable impairment or

combination of impairments significantly limits his ability to do basic work activities." <u>Williams</u>, at 751; 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a); SSR 85-28, 1985 WL 56856, at *2.   "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs" and include such things as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); 416.921(b).

A claim may be denied at step two only if an impairment or combination of impairments produces no more than a minimal effect on the claimant's physical or mental ability to do basic work activities. SSR 85-28, *supra*. If the claimant makes a mere "*de minimus*" showing that his medically determinable impairments, singly or in combination, are severe enough to significantly limit his ability to perform work-related activity, his burden at step two is satisfied. <u>Williams</u>, at 751. The Court finds that Law made this *de minimus* showing, and the ALJ's finding of nonseverity is therefore not supported by the record. The ALJ also found that there was no evidence that Law's impairment began before he reached the age of 22. This finding, too, is unsupported by the record.

The impairments alleged by Law include chronic neck and back pain, cerebral palsy, renal insufficiency, hypertension, and depression. (Tr. 29). At least with regard to the first two – neck and back pain and cerebral palsy, the ALJ erred in finding that the impairments are not severe.

The record is replete with references to the fact that Law has suffered from cerebral palsy since birth. Cerebral palsy is not a precisely defined term. It has been said to be "a persisting qualitative motor disorder appearing before the age of three years, due to a nonprogressive damage to the brain," Dorland's Illustrated Medical Dictionary 956 (26th ed. 1981), and a "defect of motor power and coordination related to damage of the brain," Stedman's Medical Dictionary 1285 (26th ed. 1995). The Merck Manual defines "cerebral palsy syndromes" as:

> A term used broadly to describe a number of motor disorders characterized by impaired voluntary movement resulting from prenatal development abnormalities or perinatal developmental abnormalities or perinatal or postnatal CNS [central nervous system] damage occurring before age 5 . . . The term cerebral palsy (CP) is not a diagnosis but identifies children with nonprogressive spasticity, ataxia, or involuntary movements.

The Merck Manual of Diagnosis and Therapy 2416 (17th ed. 1999). Some children afflicted with the spastic form of the syndrome also suffer from mental retardation. Id., at 2417. In addition, "[i]n mildly affected children, impairment may occur only during certain activities (e.g., running)." Id. The record indicates that Law suffers from both mental retardation and muscular effects of cerebral palsy, especially as triggered by physical activity.

The ALJ stated in his opinion that Law "has more recently been diagnosed as having a 'history' of cerebral palsy. However, there is no evidence as to what his history is. Specifically, there is no evidence that he experienced more than a minimal impact on his functioning due to cerebral palsy or any associated problem prior to 1981." (Tr. 29). This finding is not supported by the record. Although the record does not contain any medical evidence for the period prior to 1981, there is ample evidence from Law's physicians and other care providers that he has, since his birth, suffered from cerebral palsy, a condition which in any case is defined as developing

10

before the age of 3 to 5 years.  If Law has cerebral palsy at all, he necessarily had it before he reached the age of 22.  In addition, the record does not support the ALJ's finding that Law's cerebral palsy has had only a minimal effect on his physical or mental functioning.

The medical records note repeatedly that Law is mentally retarded, learning disabled, or developmentally disabled.  (Tr. 70, 133, 135, 171, 178, 184, 191, 213, 288, 346).  His full scale IQ has been tested as various times with results ranging from 75 to 86 (Tr. 138, 294, Ex. B to Doc. 8), and fewer than one in five people would score lower than even the highest of these scores.  (Tr. 294).  Law is classified at the UNM Family Practice Center as a "Special Needs" patient (Tr. 187, 191, 192), and he was in Special Education from kindergarten through high school (Tr. 108, 136, 410), until he quit in the 11th grade.  He had trouble learning to read.  Although he is literate, he is still is a poor reader and required help filling out the Social Security forms, dealing with correspondence from the Social Security Administration, reading the ballot when he went to vote for the first time at the age of 37, and following anything other than simple instructions.  (Tr.70, 74, 86, 88, 136, 180, 191).

Law took driver's education but could not pass the written examination.  (Tr. 136, 191). He can purchase items with cash or food stamps but does not know how to use a checkbook or take care of his own finances (Tr. 74, 191).  His clothing choices are often inappropriate, and his grooming and personal hygiene are poor.  (Tr. 75, 137, 302).  A nurse who had made home visits in 1997 noted that "[t]he boys and their dad live in a dirty cluttered 2 bedroom apartment which is almost unbelievable in its disorganization."  (Tr. 346).

In addition to Law's apparent mental deficits, his cerebral palsy causes physical problems as well.  He has been repeatedly noted to have "dysarthric" speech, related to his cerebral palsy.

11

Dysarthria is defined as "imperfect articulation of speech due to disturbances of muscular control which result from damage to the central or peripheral nervous system."[13]  The condition results in Law having great difficulty in speaking, with "slurred" or "slushy" speech which is hard for others to understand.  (Tr. 136, 137, 163, 168, 184, 188, 192, 204, 210, 294). This slurred speech is occasionally accompanied by a "dribble of saliva."  (Tr. 302).

Fine motor control is also a problem for Law.  A consulting psychologist who examined him for mental impairments noted that Law had no readily observable muscle weakness with the exception of his mouth and tongue, which affected his speech, but his impression was that Law was likely to have other areas of difficulty with fine motor control.   (Tr. 137, 294).  Law's supervisor at the woodworking shop stated that he did not actually work as a woodworking assistant because he did not have the skills for that job, and because use of the woodworking machine would have been too dangerous for him due to his cerebral palsy.  (Tr. 374).  Law also complained to doctors that he experienced numbness in his hands and legs, associated with the muscle spasms.  (Tr. 184, 189).

Walking and physical activity exacerbate Law's muscle spasms and his back and neck pain.  (Tr. 113, 207, 240, 249).  The record shows that Law sought help repeatedly over a multi-year period for symptoms of pain and muscle spasm in his neck and back, and associated numbness in his limbs.  (Tr. 132-135, 171, 183, 184, 188, 189, 193-194, 197, 204, 213, 216, 217, 220, 240, 289, 293, 331, 410-411).

Lab tests do not confirm a particular objective basis for these complaints.  X-rays of the

---

[13]Dorland's Illustrated Medical Dictionary 410 (26th ed. 1981).

12

neck and an MRI of the cervical spine taken in April and May of 1996 did not show any abnormalities (Tr. 217, 220), and a consultant who examined Law during this same time period found a full range of motion in the neck, with normal strength and no atrophy. (Tr. 215). In addition, a physical therapist noted possible "symptom magnification" in October 1995 (Tr. 229), and a consulting orthopedic surgeon noted the same phenomenon in March 1998, although he added that "symptom magnification should not be confused with malingering. It may be conscious or unconscious." (Tr. 291).

In spite of a lack of laboratory confirmation, Law has been diagnosed by various physicians with chronic neck and back pain, chronic back spasms, recurrent lumbar strain, and possible arthritis, and he has been prescribed pain killers and muscle relaxants to alleviate these symptoms. (Tr. 133, 135, 171, 183, 184, 185, 189, 193, 194, 197, 204, 240). A consulting psychologist noted in January 1998 that Law suffers frequent intense back and neck pain and that he becomes nervous when the neck pain is severe. (Tr. 293). Law stated that he had to leave the woodworking job after two years because the pain prevented him from working. (Tr. 59, 82, 191, 292, 394-396). In addition, he stated that he could not continue with a job at Goodwill Industries, because the walk to the bus stop caused back pain and spasms. (Tr. 249). The pain also interferes with his ability to do household chores. (Tr. 67, 69, 401-402, 414-415).

In making the finding at step two that Law has not experienced "more than a minimal impact on his capacities for work related functioning due to any medically determinable impairment," the ALJ must necessarily have overlooked much of the record evidence described above. Even disregarding Law's impairment of back and neck pain, which are well-documented by years of subjective complaints but not confirmed in laboratory findings, it is clear that Law's

13

cerebral palsy significantly limits his ability to do the basic work activities of walking, standing, handling, understanding, carrying out and remembering simple instructions, and exercising judgment. *See* 20 C.F.R. §§ 404.1521, 416.921. Law has therefore met his burden of establishing that a severe impairment, or combination of impairments, had more than a minimal effect on his ability to do basic work activities. The ALJ's contrary finding at step two is not supported by substantial evidence.

### The Determination at Step Five

The ALJ found at step five that there were other jobs existing in significant numbers in the national economy that Law could perform. He held that Law's testimony of subjective complaints lack credibility, and he found that Law has retained the RFC for routine, simple, repetitive light work which does not require dealing with the public. He discounted the importance of Law's receipt of general assistance benefits on grounds that "the standards for evaluation for those benefits vary significantly from those used to determine eligibility for Social Security disability benefits." And he accepted the testimony of a vocational expert ("VE") that Law would be able to perform other jobs in the national economy, such as jewelry maker, small products assembler, and bench assembler. (Tr. 30-32).

Law argues that the ALJ's incorrect assumption of prior substantial gainful activity tainted his finding at step five. In particular, Law contends that the ALJ assumed that he had acquired transferable skills at his previous presumed employment as a woodworking assistant, and the hypotheticals posed to the VE included the assumption that Law could use hand and power tools, and had acquired "basic assembly skills." (Tr. 418). In his first hypothetical, the ALJ asked the VE to "assume that he has had the past relevant work as is indicated by the vocational documents"

14

and added, "I want you to make those assumptions for all of the hypotheticals that I ask you." (Id.).

Law argues that the VE's conclusion that Law could perform the jobs of jewelry maker and assembler "was based on her impression that he had past relevant work, and that he had transferable skills from that past relevant work, allowing performance of assembly jobs . . . [However,] Mr. Law has never engaged in substantial gainful activity and, therefore, has no past relevant work or transferrable skills." (Doc. 8, at 16-17).  The Commissioner counters that the assumption of transferable skills did not affect the VE's answer, because the jobs proposed by the VE were unskilled jobs.

However, the Court agrees with Law's argument that "[t]here is no evidence that would support a finding that Mr. Law could perform the jobs enumerated by the vocational expert without the assumption of skills developed in past work." (Doc. 10, at 4).  As noted above, there is evidence on the record that Law has cerebral palsy with attendant muscular problems and experiences paresthesia (numbness) in his hands and arms, and that he has problems with fine motor control.  These factors were not included in the ALJ's hypotheticals to the VE; rather, the ALJ instructed the VE to assume that Law had prior gainful experience at work requiring fine manipulation and the use of tools, an assumption not supported by the record.

The VE's suggestions for other work in the national economy which Law is capable of doing were based on the ALJ's good faith, but nonetheless mistaken belief that Law had years of prior gainful employment.  The Court can find nothing in this record that supports a finding that Law can engage in gainful employment of any sort.  When "it is clear from the record that the claimant did not retain the ability to [work] . . . it would serve no useful purpose to remand the

15

case to the Secretary for evidence as to the claimant's vocational options." <u>Jozefowicz v. Heckler</u>, 811 F.2d 1352, 1359 (10th Cir. 1987); *see also*, <u>Harris v. Secretary of Health & Human Servs.</u>, 821 F.2d 541, 543 (10th Cir. 1987).  The Court will therefore exercise its discretion to recommend remand for an immediate award of benefits.  <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1122 (10th Cir. 1993).

<u>**Recommended Disposition**</u>

That Law's Motion to Reverse or Remand [Doc. 7] be granted and the case be remanded to the Commissioner for an immediate award of benefits on the two applications under review in this appeal.

Lorenzo F. Garcia
United States Magistrate Judge

**SOCIAL SECURITY ADMINISTRATION**          28
**Office of Hearings and Appeals**

## DECISION

**IN THE CASE OF**                          **CLAIM FOR**

                                            Period of Disability,
                                            Disability Insurance Benefits, and
                                            Supplemental Security Income
MICHAEL LAW
(Claimant)
                                            (XREF: 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)
ELI ALEXANDER RUSINKO                       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
(Wage Earner)                               (Social Security Number)

### INTRODUCTION

The present appeal arises following the filing of a request for
hearing by the claimant herein, Michael Law, after he had
received earlier denials by the Social Security Administration.

My decision is unfavorable to the claimant on the issues stated
below.  This decision is based on consideration of documentary
evidence of record listed as exhibits, as well as testimony
received at a hearing held on July 15, 1998 in Albuquerque, New
Mexico.  During the course of the present appeal, the claimant
was represented by William P. Gordon, Attorney at Law. After
careful consideration of the testimony and all the evidence, I
FIND:

1.   The claimant is the child of the wage earner.

2.   The claimant was unmarried at the time he filed his
     application and is still unmarried.

3.   The claimant has been dependent on the wage earner.

4.   The claimant attained age 18 on March 29, 1977 and reached
     age 22 on March 29, 1981. He must therefore demonstrate that
     he was disabled within that period for the purposes of his
     application for disabled adult child benefits.

5.   The claimant was engaging in substantial gainful activity
     during the period under review. He testified, and reported
     in his Vocational Report (Exhibit 4E), that he worked as a
     woodworker's assistant from October 1991 to September 1993.
     He earned $4.00 an hour, and worked fulltime, six days a
     week. I find that he was engaging in substantial gainful
     activity from October 1991 to September 1993.

MICHAEL LAW                                                    29
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
                          2

6.  The claimant alleges the following impairments: chronic back
    and neck pain, cerebral palsy, renal insufficiency,
    hypertension, and depression. I specifically find that the
    claimant has not met his burden of demonstrating, pursuant
    to the guidelines provided by Bowen v Yuckert, 482 U.S. 137
    (1987), and Social Security Rulings 85-15 and 96-3p, that he
    has experienced more than a minimal impact on his capacities
    for work related functioning due to any medically
    determinable impairment between March 29, 1977 and March 29,
    1981, or due to renal insufficiency or hypertension since
    the date he filed his application for supplemental security
    income on December 2, 1996.

    The claimant's medical records commence in 1995. While he
    alleges multiple impairments, and onset of back pain in
    1981, there is no evidence that he required treatment for
    any impairment during the period he was aged 18 to 22. He
    has more recently been diagnosed as having a "history" of
    cerebral palsy. However, there is no evidence as to what his
    history is. Specifically, there is no evidence that he
    experienced more than a minimal impact on his functioning
    due to cerebral palsy or any associated problem prior to
    1981. While he alleges specific work related functional
    restrictions due to his more recent conditions, he did not
    testify to any particular work related functional
    restriction during the period prior to the date he reached
    age 22. I find, therefore, no evidence of any medically
    determinable impairment causing more than a minimal impact
    on his capacities for work related functioning from March
    29, 1977 to March 29, 1981.

    As for his more recent condition, his medical records
    establish that his hypertension has been well controlled
    throughout the period under review (Exhibit 21F). There is
    no evidence of any end organ damage or any other problem
    associated with his hypertension, and the claimant does not
    allege that this condition causes any particular work
    related functional restriction. While he testified that he
    takes shots for his thyroid, there is no evidence that he
    has any thyroid condition causing functional difficulties,
    nor does he allege any. As for his allegations of renal
    insufficiency, there is no evidence that he has required
    treatment for such an impairment during the period under
    review, and he does not allege that he has any functional
    difficulties due to any kidney condition.

7.  During times at issue, the severity of the claimant's
    impairments has not met or equaled a listed impairment as
    found in Appendix 1, Subpart P, Regulations No. 4. I have
    specifically reviewed sections 1.00, 11.00, and 12.00.

30

MICHAEL LAW
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

3

8.  The claimant's testimony of subjective complaints and
functional limitations, including pain, was not supported by
the evidence as a whole in the disabling degree alleged and
therefore lacked credibility. At his hearing he testified to
muscle weakness "all over." However, during his
psychological examination in January 1998 he was observed to
have no readily observable incoordination or muscle weakness
(Exhibit 18F), and his consultative clinical examination in
March 1998 found no evidence of lower extremity neurological
abnormalities, limping, or muscle atrophy, and the results
of his examination revealed symptom magnification (Exhibit
17). While the claimant testified to lower extremity
numbness, he has not been diagnosed as having any impairment
reasonably expected to cause such a symptom. His clinical
examination  performed in March 1998 found no neurological
abnormalities, and the doctor found nothing to confirm a
diagnosis of cerebral palsy (Exhibit 17F).

While he testified to chronic, severe neck pain, his
cervical MRI from May 1996 was negative for any significant
abnormality (Exhibit 17F). He testified to difficulties
sitting, standing and walking, but there is no evidence of
any medical condition reasonably expected to cause such
difficulties. His psychologist observed that his cerebral
palsy affects his speech and perhaps some other fine muscle
coordination, but he did not observe any gross muscle
dysfunction or weakness reasonably expected to cause
difficulties with prolonged sitting, standing and walking
(Exhibit 18F). Moreover, the claimant has reported
consistently that he spends his days taking care of his
father, doing the housework and shopping, cooking and
cleaning the kitchen, and running errands (See testimony,
and Exhibits 2E, 17F, and 18F). He states that he does not
drive, so he has to walk to buy groceries, and carry them
back home.

9.  Since the date of his application for supplemental security
income, the claimant has retained a residual functional
capacity which supports routine, simple, repetitive light
work which does not require dealing with the public.
Nonexertional factors have not significantly altered this
work capacity. His testimony of exertional symptoms and
functional restrictions is not fully credible for the
reasons provided in Finding #8 above. While the claimant may
experience some chronic pain, his clinical examinations do
not demonstrate that he has any medical condition which
prevents him from standing and walking for up to two hours
at a time,  for as much as six hours out of an eight hour
workday, with brief intervening rest and meal breaks, or
from lifting as much as 20 pounds occasionally throughout
the day. No doctor has indicated that he experiences any

31

MICHAEL LAW
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

4

particular exertional functional restriction. I note that he
has consistently reported that he performs light activities
as his daily routine.

As for his mental condition, the claimant has been treated
for depression. His treatment notes indicate that his
depression is associated with his chronic pain, a condition
which is situational in nature. He has improved with
treatments, and reports that he is doing well on his
medications. His treatment notes indicate that he sleeps
well, his appetite is good, he has less depression, he has
no psychosis, his speech is at a normal rate and volume, and
his concentration is good. He feels good, and that he has
good judgment for his personal safety (Exhibit 19F). His
psychological examination performed in January 1998 found
that although his speech has a slushy quality, it is
intelligible, and his language use is good (Exhibit 18F).
During that evaluation the claimant reported that he left
his job because of back and neck pain. He did not indicate
that he had any mental or intellectual difficulties
performing the job. His examination found no problems with
concentration, and he had only a slightly depressed mood
with reasonable variability. His intellectual functioning
was low average. The claimant reported that his days were
occupied with taking care of his father.

Although that doctor indicated that the claimant had only
"fair" capacities to function independently, maintain
attention and concentration, use judgment, follow work
rules, and relate to coworkers, his use of the term "fair"
appears to be different from the use of that term under the
standards of the Social Security Act. In this case, the
doctor's use of the term "fair" appears to mean "no
significant difficulties expected," since he observed no
difficulties with the claimant's concentration; and he
indicated that the claimant would be able to handle any
benefits which may be awarded him, which implies that he
found the claimant able to use judgment and function
independently. He indicated that the claimant is able to
follow simple job instructions. His recommendations do
indicate, however, that he expected the claimant to
experience serious difficulties dealing with the public
(Exhibit 18F). My finding of his residual functional
capacity allows for such a problem, in that it provides that
he should not work with the public. I find no reason to
surmise that the claimant's low average intelligence would
not support simple, routine, repetitive work activities.

I am aware that the claimant has been awarded general
assistance benefits. However, the standards for evaluation
for those benefits vary significantly from those used to

32

MICHAEL LAW
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
5

determine eligibility for Social Security disability
benefits. I find, therefore, that the fact of such an award
of welfare benefits is of little help to me in my assessment
of the claimant's work capacities under the standards of the
Social Security Act, and that award is therefore accorded
little weight herein.

10. Vocational expert testimony establishes that the claimant
has been able to perform his past relevant work as a
woodworking assistant. In addition, the vocational expert
testified that other jobs exist in significant numbers which
the claimant has been able to perform. Examples of such jobs
are jobs as a jewelry maker, a small products assembler, and
a bench assembler.

11. The claimant was not under a "disability," as defined in the
Social Security Act, at any time through the date of this
decision.

### DECISION

IT IS MY DECISION that, based on his application filed on April
25, 1997, the claimant is not entitled to child's insurance
benefits pursuant to section 202(d) of the Social Security Act.

IT IS MY FURTHER DECISION that, based on the application filed on
December 2, 1996, the claimant is not eligible for supplemental
security income under sections 1602 and 1614(a)(3)(A) of the
Social Security Act.

GERALD R. COLE
United States
Administrative Law Judge

AUG 0 6 1998

Date

## OHA PSYCHIATRIC REVIEW TECHNIQUE FORM                33

NAME: Michael Law    SSN: 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

Assessment is for:  Other: March 29, 1977 to March 29, 1981

Administrative Law Judge's Signature               Date

                                                   AUG 0 6 1998

I.    MEDICAL SUMMARY
      A.    Medical Disposition(s):   No Medically Determinable
                                      Impairment

<u>OHA PSYCHIATRIC REVIEW TECHNIQUE FORM</u>                    3 4

---

NAME: Michael Law        SSN: 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

---

Assessment is for:     Other: December 2, 1996 to date of this decision

---

Administrative Law Judge's Signature           Date

                                              AUG 0 6 1998

I. MEDICAL SUMMARY
  A.   Medical Disposition(s):   RFC Assessment Necessary (i.e., a severe
                                 impairment is present which does not meet or
                                 equal a listed impairment)

  B.   Based Upon Category(ies):     12.04

II.        <u>Reviewer's Notes</u> (Does not apply to OHA)

I.         <u>DOCUMENTATION OF FACTORS THAT EVIDENCE THE DISORDER</u> (Evaluation of
           <u>the existence of a sign or symptom CLUSTER or SYNDROME for the</u>
           <u>Listed Disorder.)</u>

       PRESENT    ABSENT

       [ ]        [x]   A.   12.02   Organic Mental Disorders
       [ ]        [x]   B.   12.03   Schizophrenic, Paranoid and other
                                     Psychotic Disorders
       [x]        [ ]   C.   12.04   Affective Disorders
       [ ]        [x]   D.   12.05   Mental Retardation and Autism
       [ ]        [x]   E.   12.06   Anxiety Related Disorders
       [ ]        [x]   F.   12.07   Somatoform Disorders
       [ ]        [x]   G.   12.08   Personality Disorders
       [ ]        [x]   H.   12.09   Substance Addiction Disorders


**12.04  Affective Disorders** - Disturbance of mood, accompanied by a full or
partial manic or depressive syndrome, as evidenced by at least one of the
following:

**PRESENT-ABSENT-INSUFFICIENT EVIDENCE**

1.   [ ]  [x]  [ ]  Depressive syndrome characterized by at least four of the
                    following:
                    a.   [ ]  Anhedonia or pervasive loss of interest in
                              almost all activities, or
                    b.   [ ]  Appetite disturbance with change in weight, or
                    c.   [ ]  Sleep disturbance, or
                    d.   [ ]  Psychomotor agitation or retardation, or
                    e.   [x]  Decreased energy, or
                    f.   [ ]  Feelings of guilt or worthlessness, or
                    g.   [ ]  Difficulty concentrating or thinking, or
                    h.   [x]  Thoughts of suicide, or
                    i.   [ ]  Hallucinations, delusions or paranoid thinking
2.   [ ]  [x]  [ ]  Manic syndrome characterized by at least three of the
                    following:

MICHAEL LAW                                                    35
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
                                   2

                        a.   [ ]  Hyperactivity, or
                        b.   [ ]  Pressures of speech, or
                        c.   [ ]  Flight of ideas, or
                        d.   [ ]  Inflated self-esteem, or
                        e.   [ ]  Decreased need for sleep, or
                        f.   [ ]  Easy distractibility, or
                        g.   [ ]  Involvement in activities that have a high
                                  probability of painful consequences which are
                                  not recognized, or
                        h.   [ ]  Hallucinations, delusions or paranoid thinking
      3.  [ ]  [x]  [ ]  Bipolar syndrome with a history of episodic periods
                        manifested by the full symptomatic picture of both manic
                        and depressive syndromes (and currently characterized by
                        either or both syndromes)
      4.  [ ]  [x]  [ ]  Other


IV.   RATING OF IMPAIRMENT SEVERITY

   A.   "B" CRITERIA OF THE LISTINGS

   THE FOLLOWING FUNCTIONAL LIMITATIONS (WHICH APPLY TO PARAGRAPH B OF LISTINGS
   12.02-12.04 AND 12.06-12.08 AND PARAGRAPH D OF 12.05) EXIST AS A RESULT OF
   THE INDIVIDUAL'S MENTAL DISORDER(S).

   NOTE:     ITEMS 3 AND 4 BELOW ARE MORE THAN MEASURES OF FREQUENCY.  DURATION
             AND EFFECTS OF THE DEFICIENCIES (ITEM 3) OR EPISODES (ITEM 4) ARE
             DISCUSSED IN THE DECISION.

   Listing(s) under which the items below are being rated:  12.04

              FUNCTIONAL LIMITATION AND DEGREE OF LIMITATION
   _____

   1.   Restrictions of Activities of Daily Living:

None[ ] Slight[x] Moderate[ ] Marked*[ ] Extreme[ ] Insuff Evid[ ]
   _____

   2.   Difficulties in Maintaining Social Functioning:

None[ ] Slight[ ] Moderate[x] Marked*[ ] Extreme[ ] Insuff Evid[ ]
   _____

   3.   Deficiencies of Concentration, Persistence or Pace Resulting in Failure
        to Complete Tasks in a Timely Manner (in work settings or elsewhere):

Never[ ] Seldom [x] Often[ ] Frequent*[ ] Constant[ ] Insuff Evid[ ]
   _____

36

MICHAEL LAW
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
                                            3

4.  Episodes of Deterioration or Decompensation in Work or Work-Like
    Settings Which Cause the Individual to Withdraw from that Situation or
    to Experience Exacerbation of Signs and Symptoms (which may Include
    Deterioration of Adaptive Behaviors):

Never[x] Once/Twice[ ] Repeated*(3+)[ ] Continual[ ] Insuff Evid[ ]

*Degree of limitation that satisfies the Listings: Extreme, Constant and
Continual also satisfy that requirement.

B.   Summary of Functional Limitation Rating for "B" Criteria

    NO. OF FUNCTIONAL LIMITATIONS MANIFESTED AT THE LISTING LEVEL: [0]
    (The number must be at least 2 to satisfy the requirements of paragraph B in
    Listings 12.02, 12.03, 12.04 and 12.06 and paragraph D in 12.05; and at least
    3 to satisfy the requirements in paragraph B in Listings 12.07 and 12.08.)